UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HARRY LABARGE,

                      Plaintiff,

v.                                            7:15-CV-0732
                                           (GTS)
CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                      Defendant.
_____

APPEARANCES:                              OF COUNSEL:

LEGAL AID SOCIETY                     VICTORIA M. ESPOSITO, ESQ.
OF NORTHEAST NEW YORK – ALBANY
 Counsel for Plaintiff
55 Colvin Avenue

U.S. SOCIAL SECURITY ADMIN.        TOMASINA DIGRIGOLI, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Harry LaBarge, ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 15, 16.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on October 28, 1963.  Plaintiff completed the ninth grade in special education classes, and has past work as a laborer on a dairy farm and a general laborer working with flowers and plants.  Generally, Plaintiff's alleged disability consists of intellectual impairment, depression, manic depression, antisocial personality disorder, generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), paranoid schizophrenia, bipolar disorder, and migraine headaches.

### B. Procedural History

On December 11, 2008, Plaintiff applied for Supplemental Security Income.  Plaintiff's application was initially denied on April 28, 2009, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  On March 21, 2011, Plaintiff appeared in a video hearing before the ALJ, Marie Greener.  (T. 28-41.)  On April 12, 2011, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 7-27.)  On January 18, 2012, the Appeals Council denied Plaintiff's request for review, after which Plaintiff filed an action in the United States District Court for the Northern District of New York.  (T. 703-05, 712-15).  On January 29, 2013, pursuant to a consent order entered by the District Court on November 30, 2012, the Appeals Council remanded the case for further administrative proceedings.  (T. 716-17, 718-722.)

On July 25, 2013, Plaintiff appeared in a second video hearing before the ALJ.  (T. 643-81.)  On September 23, 2013, the ALJ issued a second written decision finding Plaintiff not disabled under the Social Security Act.  (T. 584-604.)  On February 6, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's second decision the final decision of the Commissioner  (T. 573-76.)

## C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 590-98.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 14, 2008, the application date.[1] (T. 590.) Second, the ALJ found that Plaintiff's low cognitive functioning, dysthymic disorder, and drug and alcohol abuse are severe impairments, but that Plaintiff's migraine headaches and asthma are not severe impairments. (T. 590-92.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 592-94.) The ALJ considered Listing 12.05 (intellectual disability). (*Id.*) Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with nonexertional limitations. He can work at any level of exertion that consists of simple one or two step tasks that are not complex, and that do not require complex decision-making or supervision of others; and are low stress (meaning routine daily tasks and duties in the same workplace that do not significantly change in pace or location on a daily basis and do not require more than simple short interactions with supervisors, coworkers or the public). Although the claimant may work in proximity to others, the tasks to be performed do not require working in conjunction with others and predominantly involve working with objects rather than people.

(T. 594-97.) Fifth, the ALJ found that Plaintiff has no past relevant work. (T. 597.) Sixth, and finally, the ALJ found that there are other existing jobs in the national economy that Plaintiff could perform. (T. 597-98.)

---

[1] Plaintiff's application is dated December 11, 2008 in the record. (T. 129-32, 136-39.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes four arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in finding that Plaintiff's intellectual impairment does not equal Listing 12.05. (Dkt. No. 15, at 24-27 [Pl.'s Mem. of Law].) Within this argument, Plaintiff argues that the ALJ failed to comply with the Appeals Council's remand order in reevaluating Plaintiff's intellectual impairment under Listing 12.05 because the ALJ (1) failed to apply the correct legal standard set forth in Listing 12.05 and the Appeals Council's remand order, and (2) failed to give proper consideration to pertinent evidence of record identified in the remand order. (*Id.*) Second, Plaintiff argues that the ALJ failed to consider all of Plaintiff's severe impairments, including PTSD, antisocial personality disorder, generalized anxiety disorder, and migraine headaches. (*Id.* at 27-29.) Third, Plaintiff argues that the ALJ erred in weighing the medical evidence of record. (*Id.* at 29-31.) Fourth, and finally, Plaintiff argues that the ALJ's step five analysis is not supported by substantial evidence. (*Id.* at 31-32.)

Defendant makes four arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly evaluated the severity of Plaintiff's impairments. (Dkt. No. 16, at 5-7 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ reasonably found that Plaintiff's cognitive impairment did not meet Listing 12.05. (*Id.* at 7-12.) Third, Defendant argues that the ALJ properly evaluated the medical evidence and provided substantial support for her RFC finding. (*Id.* at 12-18.) Fourth, and finally, Defendant argues that the ALJ's step five finding is supported by substantial evidence. (*Id.* at 18-19.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146,

6

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A. Whether the ALJ's Erred in Evaluating the Severity of Plaintiff's Impairments

After carefully considering the matter, the Court answers this question in the affirmative in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 15, at 27-29 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," with examples including the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). Accordingly, the severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis v. Comm'r,* 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012) (citing *Coleman v. Shalala,* 895 F. Supp 50, 53 [S.D.N.Y. 1995]); *see also McConnell v. Astrue,* 03-CV-0521, 2008 WL 833968, at *2-4 (N.D.N.Y. Mar. 27, 2008).

"The second step requirement under the prescribed disability analysis is truly *de minimis*, and intended only to screen out the truly weakest of cases." *Davis v. Colvin*, 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 [2d Cir. 1995]). When an ALJ finds that one or more of a plaintiff's impairments are severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the five-step analysis and did not deny the claim based on lack of a severe impairment alone. *Ellis,* 2012 WL 5464632, at *5; *Tyron v. Astrue*, 10-CV-0537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012); *Kemp v. Comm'r*, 10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011).

When "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010); *see also* 20 C.F.R. § 416.923 (stating that the ALJ is required to consider the "combined effect of all of [a plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

### i. Migraine Headaches

On February 2, 2009, consultative physical examiner James Naughten, D.O., diagnosed Plaintiff with history of migraine headaches and opined that Plaintiff's migraine headaches would impair his ability to perform sustained physical activity, specifically lifting, carrying, and handling objects. (T. 404.) While the ALJ discussed Dr. Naughten's assessment of Plaintiff's migraine headaches and opinion of Plaintiff's resulting functional limitations in the record, the ALJ found that "based on this record, the claimant has not been shown to have any severe physical impairments." (T. 591-92.) In rejecting Dr. Naughten opinion regarding Plaintiff's migraines and resulting physical limitations, the ALJ failed to cite an alternative medical opinion

8

of Plaintiff's physical impairments and limitations from an acceptable medical source. 20 C.F.R. § 416.1913(a) (providing that the SSA requires evidence from acceptable medical sources to establish whether a claimant has a medically determinable impairment).[2]

Thus, it appears that the ALJ improperly substituted her own lay opinion for that of an acceptable medical source in determining that Plaintiff had no severe physical impairments (and could perform a full range of work at all exertional levels). (T. 591-92, 594.) It is well settled that an ALJ "is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *accord, Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *Larkin v. Colvin,* 13-CV-0567, 2014 WL 4146262, at *9 (N.D.N.Y. Aug. 19, 2014).

As discussed below in Part III.B.iii. of this Decision and Order, this matter is being remanded for the ALJ to reevaluate Plaintiff's mental impairments under Listing 12.05. Upon remand, the ALJ should first reassess the severity of Plaintiff's migraine headaches based on competent medical evidence from an acceptable medical source. As appropriate, the ALJ may recontact Dr. Naughten for clarification or additional information regarding his opinion of Plaintiff's physical limitations resulting from his migraine headaches. *See* 20 C.F.R. §

---

[2] At step four, the ALJ stated that she afforded great evidentiary weight to the opinion that Plaintiff had no physical limitations from physician assistant Patricia Snyder, R.P.A.-C. (T. 596.) Although the ALJ did not discuss Ms. Snyder's opinion at step two, to the extent that the ALJ may have relied on Ms. Snyder's opinion in finding that Plaintiff's migraine headaches were not a severe impairment, the Court notes that Ms. Snyder is not an acceptable medical source under the regulations. 20 C.F.R. § 416.1913(a)(1)-(5) (identifying the five types of acceptable medical sources as follows: (1) licensed physicians, (2) licensed or certified psychologists, (3) licensed optometrists, (4) licensed podiatrists, and (5) qualified speech-language pathologists). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as physician assistants, to show the severity of a claimant's impairments and how a claimant's impairments may affect his or her ability to work. 20 C.F.R. §416.913(a), (c)-(d). Nonetheless, an opinion from a physician assistant is not a medical opinion under the regulations. 20 C.F.R. § 416.1913(a), 416.927(b).

416.920b(c)(1) (providing that an ALJ may recontact a medical source for clarification or to obtain additional information). This may include recontacting Dr. Naughten to obtain a more specific opinion of Plaintiff's physical limitations that Dr. Naughten identified, including the amount of weight that Plaintiff could lift and carry, and how frequently Plaintiff could lift, carry, and handle objects, during an eight-hour workday. (T. 404.)

### ii. Additional Mental Impairments: PTSD, Antisocial Personality Disorder, and Generalized Anxiety Disorder

As discussed above, the ALJ determined that Plaintiff's low cognitive functioning and dysthymic disorder were severe impairments and included mental limitations in the RFC determination. (T. 590-92, 594-97.) Plaintiff argues that the ALJ failed to find Plaintiff's additional mental impairments severe, namely PTSD, antisocial personality disorder, and generalized anxiety disorder. (Dkt. No. 15, at 27-29 [Pl.'s Mem. of Law].) However, Plaintiff's argument does not contend that these impairments cause additional functional limitations that were not included in the ALJ's RFC determination. (*Id.*) As stated above, the severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis*, 2012 WL 5464632, at *4; *see also McConnell,* 2008 WL 833968 at *2-4.

The ALJ stated that she included mental limitations in the RFC for Plaintiff's "mental impairments, variously described." (T. 592.) Moreover, the ALJ considered and accounted for the effects of Plaintiff's combined mental impairments, including Plaintiff's PTSD, antisocial personality disorder, and generalized anxiety disorder, in the remainder of the sequential analysis. (T. 592-98.) Accordingly, even if the ALJ's failure to find Plaintiff's additional mental impairments severe at step two of the sequential analysis is error, it is harmless. *Ellis*, 2012 WL 5464632 at *5; *Chavis*, 2010 WL 624039 at *12.

Therefore, remand is not required on this basis. However, this should not be read to preclude the ALJ from reassessing the severity of Plaintiff's PTSD, antisocial personality disorder, and generalized anxiety disorder in light of any new evidence obtained upon remand.

> **B. Whether the ALJ Complied with the Appeals Council's Remand Order in Evaluating Plaintiff's Mental Impairments Under Listing 12.05**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 15, at 24-27 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Failure to comply with the Appeals Council's remand order may be grounds for remand. *See Gorman v. Astrue,* 08-CV-0251, 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (remanding for failure to comply with the Appeals Council's remand order); *Scott v. Barnhart,* 592 F. Supp 2d 360, 371-72 (W.D.N.Y. 2009) ("The ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand.")

A plaintiff will be found disabled if the individual has an impairment, or combination of impairments, that meets or equals one of the Listings and meets the duration requirement. 20 C.F.R. § 416.920(d). The burden is on the plaintiff to present medical findings that his or her impairment meets or equals a Listing. *Davis v. Astrue,* 09-CV-0186, 2010 WL 2545961, at *3 (N.D.N.Y. June 3, 2010). A plaintiff must show that his or her impairment meets or equals *all* of the specified medical criteria of a Listing. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (superceded by statute on other grounds). If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Sullivan,* 493 U.S. at 530.

Listing 12.05, intellectual disability (formerly called mental retardation), states in pertinent part:

> Listing 12.05, Intellectual disability: Intellectual disability refers to significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
>
> D. A valid, verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, App. 1 § 12.05.

Accordingly, to meet or equal Listing 12.05, a plaintiff must make a threshold showing that he or she has significantly subaverage general intellectual functioning with deficits in adaptive functioning, initially manifested prior to age 22. 20 C.F.R. Part 404, Subpart P, App. 1 § 12.05; *see also Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012).

### i. Plaintiff's IQ Test Report and Intelligence Evaluation from Consultative Examiner Jeanne Shapiro, Ph.D.

On February 3, 2009, Dr. Shapiro administered WAIS-III testing indicating that Plaintiff had a verbal scale IQ score of 64, a performance scale IQ score of 69, and a full scale IQ score of 63. (T. 400.) Dr. Shapiro indicated that Plaintiff appeared to be incapable of reading, writing, or doing arithmetic at an age appropriate level; and was functioning in the mild range of mental retardation. (*Id.*) While Plaintiff reported to Dr. Shapiro that he could manage money, Dr.

Shapiro opined that Plaintiff was not capable of managing his own money due to his mental retardation. (T. 396-97.)

Dr. Shapiro noted that Plaintiff had been enrolled in special education classes and did not advance past the ninth grade. (T. 398.) Dr. Shapiro further observed that, during testing, Plaintiff counted on his fingers to perform simple addition and subtraction. (T. 395.) Dr. Shapiro observed that Plaintiff's intellectual functioning was in the deficient range, and Plaintiff's insight and judgement were poor. (T. 396.) Plaintiff reported to Dr. Shapiro that he lived with his fiancé and her father, and reported that he could dress, bathe, and groom himself, but he did not cook, prepare food, do general cleaning, laundry, shopping, drive, or take public transportation. (T. 400.) Plaintiff further reported that he could not work because of "blackouts" and depression, and had last worked for a period of two months before he left due to depression. (T. 398.)

Dr. Shapiro diagnosed Plaintiff with mild mental retardation and depressive disorder. (T. 396-97, 401.) Dr. Shapiro opined that Plaintiff appeared to be able to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, perform rote tasks, work in an appropriate setting in a position for which he has been adequately trained, maintain attention and concentration for tasks, learn simple new tasks, make some appropriate decisions, relate to and interact appropriately with others some of the time, and deal with some stress. (T. 396, 400-01.) Dr. Shapiro opined that, given Plaintiff's overall level of cognitive functioning, he may have difficulty with more complex tasks, instructions or directions. (*Id.*) Dr. Shapiro further opined that Plaintiff may find it difficult to regularly attend to a routine and maintain a schedule because he does not drive or take public transportation. (*Id.*)

### ii. The ALJ's Decision of April 12, 2011

In finding that Plaintiff's intellectual impairment did not meet or equal Listing 12.05 in her first decision in this matter, the ALJ stated that "there is no evidence to support a diagnosis of mild mental retardation during the developmental period prior to age 22." (T. 16.) The Appeals Council's remand order noted that the ALJ applied an incorrect legal standard, stating that "the record does not need to include a diagnosis of mental retardation [or intellectual disability] before age 22." (T. 720); *see, i.e.*, *DeCarlo v. Astrue,* 06-CV-0488, 2009 WL 1707482, at *5 (N.D.N.Y. June 17, 2009) (finding that requiring Plaintiff to have a formal diagnosis of mental retardation to meet or equal Listing 12.05 was "an improper interpretation of the legal standard"). Further, The Appeals Council's remand order provided the correct legal standard for the threshold inquiry to evaluate a plaintiff's mental impairments under Listing 12.05, stating that "the record needs to indicate that the claimant had significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." (T. 720); 20 C.F.R. Part 404, Subpart P, App. 1 § 12.05; *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

Moreover, the Appeals Council's remand order stated that the ALJ did not address the pertinent evidence for this inquiry, and provided page numbers for specific evidence in the record including: (1) Plaintiff's testimony that he had difficulty reading the newspaper and letters; (2) Plaintiff's function report indicating that his fiancé helped him handle his money; and (3) Plaintiff's IQ score reports and examination notes from Dr. Shapiro discussed above in Part III.B.i of this Decision and Order. (T. 720.) Accordingly, the Appeals Council concluded that "further evaluation of the claimant's mental impairments under Listing 12.05 is warranted." (*Id.*)

14

### iii.     The ALJ's Decision of September 23, 2013

Upon remand, the ALJ again found that Plaintiff's intellectual impairment does not meet or equal Listing 12.05, stating that "there is no showing by documentary evidence that the claimant had an intellectual disability upon testing prior to age 22." (T. 592.)  However, Listing 12.05 does not require documentary evidence that Plaintiff had an intellectual disability upon testing.  20 C.F.R. Part 404, Subpart P, App. 1 § 12.05.  Rather, the record needs to indicate that Plaintiff had "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period."  20 C.F.R. Part 404, Subpart P, App. 1 § 12.05; *see also Burnette v. Colvin,* 564 F. App'x 605, 607  (2d Cir. 2012)*;Talavera*, 697 F.3d at 151.  Accordingly, the Court finds that in reevaluating Plaintiff's mental impairments under Listing 12.05 upon remand, the ALJ again failed to apply the correct legal standard set forth in Listing 12.05 and provided in the Appeals Council's remand order.

Next, the Court will address Plaintiff's argument that the ALJ failed to give proper consideration to pertinent evidence identified in the remand order in reevaluating Plaintiff's mental impairments under Listing 12.05.  (T. 720.)  Turning to the ALJ's analysis of Plaintiff's intellectual disability, the ALJ stated that, "despite the one time test results attained by Dr. Shapiro, there is no indication that the claimant has an intellectual disability."  (T. 593.)

In the Second Circuit, it is reasonable to presume, in the absence of evidence indicating otherwise, that a claimant will have a fairly constant IQ throughout his or her lifetime.  *Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012); *Jackson v. Colvin,* 14-CV-0756, 2015 WL 5005740, at *3 (N.D.N.Y. Aug. 20, 2015); *Lyons v. Colvin,* 13-CV-0614, 2014 WL 4826789, at * 11 (N.D.NY. Sept. 29. 2014).  On this basis, the Second Circuit has found that evidence of a plaintiff's qualifying IQ score as an adult suffices to satisfy the plaintiff's prima facie burden of

15

establishing "significantly subaverage general intellectual functioning . . . initially manifested . . . before age 22" under Listing 12.05. *Talavera*, 697 F.3d at 152. As noted above, Dr. Shapiro reported that Plaintiff had a verbal scale IQ score of 64, a performance scale IQ score of 69, and a full scale IQ score of 63. (T. 400.) Accordingly, the Court finds that this evidence of Plaintiff's qualifying IQ scores as an adult suffices to satisfy his prima facie burden of establishing significantly subaverage general intellectual functioning initially manifested before age 22 for Listing 12.05. *Talavera*, 697 F.3d at 152.

Next, the Court turns to the ALJ's assessment of Plaintiff's adaptive functioning. "The term 'adaptive functioning' refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age. Indicators of adaptive behavior include . . . educational and social achievements." *Lyons,* 2014 WL 4826789, at *11 (quoting POMS DI 25415.056 D2). An individual has a deficit in adaptive functioning when he or she "is unable to satisfactorily cope with the challenges of ordinary life, including living on one's own, taking care of children without help sufficiently well that they have not been adjudged neglected, paying bills, and avoiding eviction." *Burnette,* 564 F. App'x at 607 (quoting *Talavera*, 697 F.3d at 153) (internal quotation marks and citations omitted). "Courts have found circumstantial evidence, such as the following, sufficient to infer deficits in adaptive functioning prior to age 22: evidence a claimant attended special education classes; dropped out of school before graduation; or had difficulties in reading, writing, or math." *Lyons*, 2014 WL 4826789 at *9 (quoting *Decarlo,* 2009 WL 1707482, at *6) (internal citations and quotation marks omitted).

Here, the ALJ stated that Plaintiff's school records failed to indicate any concern about his level of functioning. (T. 572.) However, as noted above, Plaintiff attended special education

16

classes, and did not advance past the ninth grade. (T. 154, 398.) Moreover, Plaintiff testified that had he difficulty reading the newspaper and letters, and Dr. Shapiro observed that Plaintiff counted on his fingers to perform simple addition and subtraction. (T. 395, 655-56.) Dr. Shapiro assessed that Plaintiff was incapable of reading, writing, or doing arithmetic at an age appropriate level, and was functioning in the mild range of mental retardation. (T. 400.)

Additionally, in discussing Plaintiff's adaptive functioning, the ALJ stated that Plaintiff did well working for a flower shop, had a long history of managing his own money, socialized, and adapted to living on the streets. (T. 592-93.) However, Plaintiff reported to Dr. Shapiro that he was unable to work because of "blackouts" and depression, and had last worked for a period of two months before he left due to depression. (T. 398.) Plaintiff reported to Dr. Shapiro that he lived with his fiancé and her father, and testified at the hearing that he has been homeless in the past. (T. 400, 657.) Plaintiff further reported that he could dress, bathe, and groom himself, but did not cook, prepare food, do general cleaning, laundry, shopping, drive, or take public transportation. (T. 400.) Plaintiff's function report indicated that his fiancé helped him handle his money and, while Plaintiff reported to Dr. Shapiro that he can manage money, Dr. Shapiro opined that Plaintiff was not capable of managing his own money because of his mental retardation. (T. 54, 396-97.)

Although the ALJ acknowledged some of this evidence elsewhere in her decision, her analysis of Plaintiff's intellectual impairment and adaptive functioning under Listing 12.05 primarily discussed evidence purported to support her conclusion that Plaintiff did not have deficits in adaptive functioning. (T. 592-94.) This District Court has found that an ALJ's failure to assess evidence contrary to her conclusion that a plaintiff did not have deficits in adaptive functioning in considering Listing 12.05 was error requiring remand. *Barton v. Astrue,* 08-CV-

17

0810, 2009 WL 5067526, at 7-8 (N.D.N.Y. Dec. 16, 2009) (noting that the regulations require an ALJ to assess all the relevant evidence in a case record in considering mental impairment Listings) (citing 20 C.F.R. Part 404, Subpart P, App. 1 § 12.00). The Second Circuit has stated, "[a]lthough we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, we cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor." *Fiorello v. Heckler*, 725 F.3d 174, 176 (2d Cir. 1983) (internal citations omitted).

Moreover, it appears that the ALJ may have misinterpreted some of the evidence of record in her analysis of Plaintiff's adaptive functioning. (T. 592-93.) For example, the ALJ stated that Plaintiff "was able to engage in all activities of daily living, including riding a bus and managing his own money, as reported by Dr. Shapiro." (T. 593.) However, Dr. Shapiro reported that Plaintiff *did not* cook or prepare food, do general cleaning, laundry, shopping, drive, or take public transportation, and Dr. Shapiro opined that Plaintiff was *not capable* of managing his own money because of his mental retardation. (T. 396-97, 400.) Additionally, the ALJ stated that Dr. Shapiro "found the claimant's judgment and insight was poor, but the remainder of the mental status exam was unremarkable." (T. 593.) However, as discussed above in Part III.B.i. of this Decision and Order, Dr. Shapiro observed that Plaintiff's intellectual functioning was in the "deficient range," and diagnosed Plaintiff with mild mental retardation and depressive disorder. (T. 396-97, 401.)

Turning to the ALJ's finding that Plaintiff's intellectual impairment did not meet Listing 12.05C, the ALJ stated that Plaintiff did not have a physical or other mental impairment imposing an additional and significant work-related limitation of function. (T. 593.) However, apart from Plaintiff's mental limitations included in the RFC, Dr. Naughten's opinion indicated that Plaintiff's migraine headaches imposed additional physical work-related limitations

18

discussed above in Part III.A.i. of this Decision and Order. (T. 404.) Notably, Dr. Naughten's opinion is the only acceptable medical source opinion of Plaintiff's physical abilities and limitations in the record, and an ALJ may not substitute his or her own lay opinion for a competent medical opinion. *Greek*, 802 F.3d at 375; *Rosa,* 168 F.3d at 79; *Balsamo*, 142 F.3d at 81; *Larkin,* 2014 WL 4146262, at *9.

For these reasons, the Court finds that remand is required for the ALJ to reevaluate Plaintiff's mental impairments under Listing 12.05 based on the correct legal standard set forth in Listing 12.05 and identified above. 20 C.F.R. Part 404, Subpart P, App. 1 § 12.05; *see also Burnette*, 564 F. App'x at 607; *Talavera*, 697 F.3d at 151. The ALJ's analysis should consider all of the relevant evidence, including the opinions and examination notes from consultative examiners Dr. Shapiro and Dr. Naughten, and the ALJ should request additional evidence as needed. (T. 393-97, 404.) Because the Court has concluded that remand is required for the ALJ to reevaluate Plaintiff's intellectual impairment under Listing 12.05, the Court need not reach Plaintiff's remaining arguments concerning subsequent steps of the sequential analysis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: September 28, 2016
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge